UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROBERT D.,

                Plaintiff,

      v.                                                  6:19-CV-0340
                                                              (DJS)

COMM'R OF SOC. SEC.,

                Defendant.

---

**APPEARANCES:**                                            **OF COUNSEL:**

OFFICE OF PETER M. HOBAICA, LLC          B. BROOKS BENSON, ESQ.
Counsel for Plaintiff
2045 Genesee Street
Utica, New York 13501

U.S. SOCIAL SECURITY ADMIN.               PAUL NITZE, ESQ.
Counsel for Defendant
J.F.K. Federal Building, Room 625
15 Sudbury Street
Boston, Massachusetts 02203

**DANIEL J. STEWART**
**UNITED STATES MAGISTRATE JUDGE**

## DECISION and ORDER[1]

      Currently before the Court, in this Social Security action filed by Robert D. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 7 & General Order 18.

for Judgment on the Pleadings. Dkt. Nos. 13 & 15. For the reasons set forth below, Plaintiff's Motion is granted and Defendant's Motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1972, making him 42 years old at his alleged onset date. Tr. at p. 215.[2] Plaintiff reported completing the twelfth grade. Tr. at p. 220. He has previous work as a cook, prep cook, line cook, and kitchen manager. Tr. at p. 44. Plaintiff initially alleged disability due to a back problem. Tr. at p. 219.

### B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on November 12, 2015, alleging disability beginning October 7, 2015. Tr. at pp. 34, 89-90, & 196-99. Plaintiff's applications were initially denied on January 7, 2016, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 89-103. He appeared at an administrative hearing before ALJ Yvette N. Diamond on December 13, 2017. Tr. at pp. 31-88. On January 31, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 14-30. On January 24, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

---

[2] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "Tr." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

## C. The ALJ's Decision

In her decision, the ALJ made the following seven findings of fact and conclusions of law.  First, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2019.  Tr. at p. 19.  Second, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date.  *Id*.  Third, the ALJ found Plaintiff's degenerative disc disease of the cervical spine with radiculopathy and degenerative joint disease of the right shoulder are severe impairments.  Tr. at p. 20.  Fourth, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  *Id*.  Specifically, the ALJ considered Listings 1.02 (dysfunction of a joint) and 1.04 (disorders of the spine).  *Id*.  Fifth, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work with additional limitations.  Tr. at pp. 20-21.  Specifically, the ALJ found Plaintiff

> can lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six out of eight hours; and sit for six out of eight hours.  [He] can occasionally climb stairs, balance, stoop, kneel, and crouch, but cannot crawl or climb ladders.  He can frequently reach and handle with the dominant right upper extremity.  [He] cannot reach overhead or below the knees.  He requires the option to stand for thirty to sixty minutes and then sit for ten to fifteen minutes throughout the day as needed, while remaining on task.  [He] cannot have concentrated exposure to extreme cold and cannot have any exposure to hazards.

*Id*.  Sixth, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. at p. 24.  Seventh, the ALJ found Plaintiff can perform other jobs existing in significant numbers in the national economy.  Tr. at pp. 25-26.  The ALJ therefore concluded Plaintiff is not disabled.  Tr. at p. 26.

### D. The Contentions of the Parties

In his brief, Plaintiff contends the ALJ erred in failing to find Plaintiff's mid and low back pain with bilateral radiculopathy to be severe impairments. Dkt. No. 13, Pl.'s Mem. of Law at pp. 18-19. Plaintiff also argues the ALJ erred in weighing the medical opinion evidence and ignored limitations assessed in a functional capacity evaluation. *Id*. at pp. 13-18 & 20-21. Plaintiff also contends the Appeals Council erred in failing to consider additional evidence and the ALJ failed to properly evaluate his symptoms. *Id*. at pp. 22-25. Finally, Plaintiff contends the ALJ erred in relying on the vocational expert's testimony regarding jobs available to Plaintiff. *Id*. at p. 25.

In his brief, Defendant argues the ALJ considered all of the evidence related to Plaintiff's spine impairment and there is no objective basis to deem degeneration in the lumbar or thoracic spine severe. Dkt. No. 15, Def.'s Mem. of Law at pp. 18-21. Defendant also contends the ALJ properly weighed the opinion evidence and the RFC determination is supported by substantial evidence. *Id*. at pp. 3-18. Defendant argues the ALJ properly evaluated Plaintiff's complaints of neck pain and other symptoms. *Id*. at pp. 21-25. Finally, Defendant argues the January 2018 treatment note before the Appeals Council is not new or material. *Id*. at pp. 9-12.

### II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See*

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

### A. The ALJ's Analysis at Step Two

*1. Applicable Law*

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). The claimant retains the burden of presenting evidence to establish severity. *Id*. (citing *Miller v. Comm'r of Soc. Sec.*, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*,

2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *report and recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

*2. The ALJ's Step Two Analysis*

Here, the ALJ found Plaintiff's degenerative disc disease of the cervical spine with radiculopathy and degenerative joint disease of the right shoulder to be severe impairments. Tr. at p. 20.  Plaintiff maintains the ALJ erred in finding only Plaintiff's cervical degenerative disc disease with radiculopathy and degenerative joint disease of the right shoulder to be severe impairments, thereby ignoring Plaintiff's mid and low back pain with radiculopathy. Pl.'s Mem. of Law at pp. 18-19.  The Court disagrees.

Although the ALJ did not find Plaintiff's mid or low back pain severe at Step Two, the ALJ's decision indicates that she considered the overall extent of Plaintiff's alleged impairments and symptoms including mid and low back pain. Tr. at pp. 20-24.  For example, within her RFC analysis, the ALJ referenced treatment notes in which Plaintiff reported continued neck pain with radiation into his bilateral arms and medial back as well as worsening lower back pain. Tr. at pp. 23, 364-67, & 610-18.  Any error to find further spinal impairments severe is, therefore, harmless because the ALJ found at least one physical impairment severe (including a spinal impairment), continued with the sequential evaluation, and provided explanation of her RFC determination

indicating she adequately considered Plaintiff's spinal impairments. *Fuimo v. Colvin*, 948 F. Supp. 2d at 269-70.

For these reasons, the Court finds that any error by the ALJ in failing to find other specific spinal impairments severe is harmless. The Court also finds that the ALJ's severity findings at Step Two and analysis at subsequent steps in the sequential evaluation reflect consideration of the full extent of Plaintiff's alleged impairments and symptoms. Remand is therefore not required on this basis.

### B. The ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

#### *1. Applicable Law*

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2)).

The Second Circuit has long recognized the "treating physician rule" set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, " the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued

opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "'explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 404.1527 is required.  *Atwater v. Astrue*, 512 Fed. Appx. 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart,* 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

In *Estrella v. Berryhill*, the Second Circuit more recently addressed an ALJ's failure to "explicitly" apply the regulatory factors set out in *Burgess* when assigning weight to a treating physician's opinion.  925 F.3d 90 (2d Cir. 2019).  In *Estrella*, the Court explained that such a failure is a procedural error and remand is appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'"  925 F.3d at 96 (alteration in original) (quoting *Halloran v. Barnhart*, 362 F.3d at 32).  The Court further clarified that "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm." *Estrella v. Berryhill*, 925 F.3d at 96 (quoting

10

*Halloran v. Barnhart*, 362 F.3d at 32). The Court also noted the question of "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'" is "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion." *Id*.

The Second Circuit recently reiterated its *Estrella* findings in *Ferraro v. Saul*, indicating that the ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that the claimant had with his treating physicians, did not otherwise provide "good reasons" for assigning reduced weight to the opinions of those physicians, and a searching review of the record did not assure the Court that the substance of the treating physician rule was not traversed. 2020 WL 1189399, at *2-3 (2d Cir. Mar. 12, 2020). The Court in *Ferraro* also indicated that "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'" *Id*. at *2.

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d at 375 (citing *Burgess v. Astrue*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability. *See Frye ex rel. A.O. v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v.*

11

*Colvin*, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

### 2. The ALJ's Analysis of the Opinion Evidence

The ALJ considered the December 2015 opinion of consultative examiner Brian Cole, M.D., who noted Plaintiff appeared in no acute distress at the examination, had a normal gait and stance, could walk on his heels and toes without difficulty, had a full squat with lower back pain, used no assistive devices, needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty.  Tr. at p. 322.  Dr. Cole observed that Plaintiff had full range of motion in the cervical and lumbar spine, negative straight leg raise testing bilaterally, stable and non-tender joints, physiologic and equal deep tendon reflexes in the upper and lower extremities, no sensory deficits, full strength in the upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally.  Tr. at p. 323.  Dr. Cole diagnosed a cervical herniated disc, status post cervical laminectomy, pain and arm neuropathy, right rotator cuff tendinitis with tearing pain, and C4-C5 instability and opined that Plaintiff had mild restriction for squatting, kneeling, and heavy lifting and carrying.  Tr. at p. 324.  The ALJ afforded great weight to Dr. Cole's opinion because Dr. Cole is a specialist in internal medicine and "he has an understanding of social security disability programs and evidentiary requirements."  Tr. at pp. 23-24.  The ALJ also indicated that this opinion was highly credible because it was well-supported by the objective medical evidence and was consistent with the

record as a whole including Plaintiff's longitudinal treatment record and activities of daily living. Tr. at p. 24.

The ALJ also considered treatment records from treating provider Deborah S. Lee, D.O., who indicated in January 2016 that Plaintiff remained unable to work at that time and could not do his job as a cook with persistent neck pain. Tr. at pp. 325-26. The ALJ afforded limited weight to this opinion because it goes to an issue reserved to the Commissioner and therefore could not be given special significance. Tr. at p. 24. The ALJ also indicated that Dr. Lee "failed to note vocationally relevant limitations in support of her conclusion." *Id*.

The ALJ noted the December 2017 functional capacity evaluation by Raymond A. Alessandrini, OTR/L, who indicated Plaintiff was capable of resuming a position in the light strength category with maximum lifting capacity of 15 pounds and maximum carrying capacity of 10 pounds. Tr. at pp. 657-61. The ALJ afforded great weight to this assessment because it was generally consistent with the medical and other evidence, indicating that it noted Plaintiff was capable of performing work in the light range of work. Tr. at p. 23. The ALJ did not otherwise discuss Mr. Alessandrini's assessment, including the indicated job factor restrictions which noted that, in order for Plaintiff to successfully return to work in the light strength category, certain restrictions must be met. Tr. at pp. 23 & 660. Such restrictions included no walking at all (noting Plaintiff could not walk at the minimum required speed during the assessment), no pushing more than 30 pounds, and no pulling more than 20 pounds. Tr. at p. 660.

Finally, the ALJ considered the January 2018 treating opinion from pain management specialist Muthu M. Ramasamy, M.D., who noted poor response to treatment and diagnoses including failed neck surgery syndrome, facet arthropathy, cervicogenic headaches, and neck

pain. Tr. at pp. 662 & 665. Dr. Ramasamy opined Plaintiff could occasionally lift and carry up to 7.5 pounds, sit and stand 30 minutes each for a total of two hours each, walk 20 minutes for a total of 1-2 hours (with the other time spent resting or laying down in bed), frequently reach, handle, finger, and feel, occasionally reach overhead and push/pull with the bilateral upper extremities, occasionally use his feet for the operation of foot controls, occasionally climb stairs and ramps, occasionally stoop, never climb ladders or scaffolds, never balance, kneel, crouch or crawl, never tolerate unprotected heights, moving mechanical parts, extreme cold/heat, or vibrations, and occasionally tolerate operating a motor vehicle, humidity, wetness, and respiratory irritants. Tr. at pp. 663-67. Dr. Ramasamy indicated that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces and would need to take unscheduled breaks every 30 minutes to rest for 1-2 hours. Tr. at p. 668. Plaintiff was likely to be off-task 25 percent of the time or more and absent more than four days per month. Tr. at pp. 668-69.

   The ALJ afforded limited weight to Dr. Ramasamy's opinion, noting that

> [w]hile deference is generally due to a treating provider's opinion, it does not release such provider from providing some meaningful support for the stated conclusions. Further, although such opinions will often rely to some extent on symptoms, it is not unreasonable that the pertinent signs and laboratory findings that one would expect a treating provider to have in the claimant's treatment record should also be presented. In the instant case, this statement generally fails to identify specific, relevant clinical data in support of its relatively severe restrictions. Moreover, the claimant's treatment records show that the claimant has a limited history of only two visits with this provider.

Tr. at p. 24.

   The Court agrees with Plaintiff's argument that the ALJ's analysis of the medical opinions here warrants remand.

14

First, the Court is persuaded by Plaintiff's argument that the ALJ ignored limitations assessed by Mr. Alessandrini and did not adequately explain why she ignored them. Pl.'s Mem. Of Law at pp. 16-18. The ALJ failed to discuss the indicated job restriction of no walking in Mr. Alessandrini's assessment, despite affording the opinion great weight. Tr. at pp. 24 & 660. The ALJ's explanation of the weight afforded to this opinion fails to give the Court a clear picture of her analysis, namely why such a limitation was ignored and not even discussed. Tr. at p. 24. The Court is left unable to conduct meaningful review regarding the ALJ's consideration of this opinion and how it factored into the RFC determination. *See Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (citation omitted).

Defendant argues the ALJ properly considered Mr. Alessandrini's opinion and that Plaintiff's argument fails to acknowledge Mr. Alessandrini is not an acceptable medical source under the Regulations. Def.'s Mem. of Law at pp. 12-15. This argument would be more availing if the ALJ herself had acknowledged Mr. Alessandrini was not an acceptable medical source and had not afforded this opinion great weight without discussing his status as an occupational therapist. Tr. at p. 23. However, that discussion has not been provided by the ALJ, again leaving this Court unable to conduct meaningful review of her analysis. "A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action. Subsequent arguments by the Commissioner detailing the substantial evidence supporting the ALJ's decision are not a proper substitute for the ALJ engaging in the same evaluation." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 144 (N.D.N.Y. 2012) (internal quotations and citations omitted).

Defendant also maintains that remand for proper consideration of Mr. Alessandrini's opinion would be pointless, Def.'s Mem. of Law at pp. 14-15, but the Court is not convinced in light of the additional errors identified below which, in conjunction with the issues regarding the ALJ's analysis of Mr. Alessandrini's opinion, indicate that the RFC determination is not supported by substantial evidence.

Second, while the ALJ's RFC analysis nominally relies on the opinions of Mr. Alessandrini and consultative examiner Dr. Cole with the ALJ affording both of these opinions great weight, the ALJ's RFC assessment includes greater restrictions (including no overhead or below the knee reaching and a sit-stand option) than those included in Dr. Cole's opinion (indicating only mild restriction for squatting, kneeling, and heavy lifting and carrying) and more specific restrictions than indicated by the ALJ's interpretation of Mr. Alessandrini's opinion that Plaintiff was capable of performing work in the light range of work.  Tr. at pp. 20-24, 324, & 660.  The ALJ's analysis and limited discussion of the opinion evidence provides little insight as to how the additional restrictions and the ultimate RFC determination were reached.  Tr. at pp. 23-24.  The Court cannot conclude that substantial evidence supports the ALJ's analysis of the opinion evidence and Plaintiff's RFC because, although it is within the ALJ's purview to consider all of the evidence including conflicting medical opinions to reach a conclusion regarding a claimant's RFC, there does not appear to be a logical bridge here from the ALJ's analysis to the RFC determination.  *See Camarata v. Colvin*, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting *Galiotti v. Astrue*, 266 Fed. Appx. 66, 67 (2d Cir. 2008)) ("[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'").

Finally, the Court is also troubled by the analysis of Dr. Ramasamy's[3] and Dr. Lee's opinions. Tr. at p. 24. Namely, the ALJ noted Plaintiff had a limited treatment history of only two visits with Dr. Ramasamy and indicated that Dr. Ramasamy's opinion generally failed to "identify specific, relevant clinical data in support of its relatively severe restrictions." Tr. at p. 24. However, the Court's review indicates that Dr. Ramasamy did note clinical findings including neck pain, tenderness, muscle spasm, and headaches as well as a laboratory finding of a cervical spine MRI status post C5-C6 fusion. Tr. at p. 662. Further, in opining lifting and carrying restrictions, Dr. Ramasamy identified particular medical and clinical findings including failed neck surgery syndrome, cervicogenic headaches, and neck pain. Tr. at p. 663. In assessing occasional use of the feet for operation of foot controls as well as reaching, handling, fingering, feeling and pushing/pulling limitations, Dr. Ramasamy noted chronic constant neck pain and cervicogenic headaches. Tr. at p. 665. Finally, Dr. Ramasamy again noted failed neck surgery syndrome, chronic low back pain, chronic neck pain, and cervicogenic headaches when opining postural and environmental limitations. Tr. at pp. 666-67.

Although Dr. Ramasamy's notations may not have been particularly specific, it is apparent he provided at least some relevant explanations for the opined limitations based on his treatment of Plaintiff between June 2017 and January 2018. Tr. at pp. 345-51, 364-65, & 662-67. Dr. Ramasamy also noted that he had treated Plaintiff with cervical facet branch blocks and Plaintiff had poor response to treatment. Tr. at p. 662. Further, follow-up treatment with neurosurgeon Yan Michael Li, M.D., and primary care provider Dr. Lee support Dr. Ramasamy's observations of chronic neck pain and failed neck surgery syndrome. For example, in May 2017,

---

[3] Referred to in the ALJ's opinion as Dr. Manickam.

Dr. Li noted Plaintiff had recurrent neck and right arm pain following his spinal fusion surgery in August 2016 with pain radiating down his bilateral arms to his fingers and radiation to the mid-line of his back with numbness.  Tr. at p. 610.  Dr. Li indicated imaging showed cervical spondylosis with radiculopathy and Plaintiff might benefit from nerve blocks or a bone stimulator to help with bone fusion.  Tr. at p. 613.  In October 2017, Dr. Lee noted Plaintiff had done injections which aggravated his neck and increased pain in his arm.  Tr. at p. 366.  Therefore, based on a review of the record, the Court is also not convinced that the ALJ properly considered these opinions.

That is particularly true in light of the Second Circuit's *Estrella* and *Ferraro* opinions.  The ALJ acknowledged that both Ramasamy and Lee were treating providers, but the analysis does not provide the type of explicit consideration of the *Greek* factors that the Second Circuit requires.  Tr. at p. 24.  The decision does not provide the type of "good reasons" for assigning a treating doctor's opinion less than controlling weight, which these cases require.  *Estrella v. Berryhill*, 925 F.3d at 96.  Given the inconsistencies noted above, the Court cannot conclude that the "substance of the treating physician rule was not traversed."  *Id.*   For these reasons, the Court finds the ALJ's analysis of the medical opinions and the resulting RFC are not supported by substantial evidence.  Remand is, therefore, required.

Because remand is necessary to address the errors identified above, the Court declines to reach findings on Plaintiff's other arguments regarding the ALJ's evaluation of Plaintiff's symptoms, the Step Five determination, and the Appeals Council's failure to consider evidence submitted after the ALJ's decision.  However, upon remand, the ALJ should also consider the

entire record and conduct a new analysis of Plaintiff's symptoms and ability to perform other jobs existing in significant numbers in the national economy.

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). On remand the Commissioner should properly evaluate the medical opinion evidence and reevaluate Plaintiff's RFC and ability to perform competitive work.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED,** that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED,** that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED,** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical opinions and Plaintiff's RFC, and other further proceedings, consistent with this Decision.

Dated: May 20, 2020
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge